In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00025-CR
______________________________


ANDREW LEE GRAY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2003-F-00119


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Andrew Lee Gray was convicted by a jury in a single trial of attempted capital
murder,


 aggravated assault on a public servant,


 and taking a weapon from a police
officer.


 The named victim in each case was Sherry Gillespie, a police officer with the City
of Linden. Gray withdrew his previous election to have the jury set his punishment and,
before voir dire examination of the jury panel, filed a written election for the trial court to
assess punishment. The trial court set Gray's punishment at two life terms for the charges
of attempted capital murder and aggravated assault on a public servant, and assessed
Gray's punishment at ten years' imprisonment for the charge of taking a weapon from a
peace officer. Gray timely appealed to this Court. 
          During the initial round of appellate briefing, Gray's appointed appellate counsel filed
an Anders


 brief in which counsel professionally discussed the record, described the issues
reviewed, and concluded there were no arguable grounds for appeal and, as required by
Anders, filed a motion to withdraw. During our independent review of the case, we noticed
two arguable issues that required further briefing. We therefore abated the appeal,
remanded the case to the trial court, and allowed Gray's appointed counsel to withdraw. 
See Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). The trial court then
appointed new counsel for Gray, see id., and counsel has since submitted a brief to this
Court raising four issues in two points of error: (1) whether "[t]he evidence is legally and
factually insufficient to support the jury's finding that appellant used or exhibited a deadly
weapon during the commission of these offenses," and (2) whether "[t]he dual convictions
for attempted capital murder and aggravated assault violated the prohibition against double
jeopardy in the U.S. and Texas Constitutions." For the reasons stated below, we overrule
the first issue and sustain Gray's second point of error. Accordingly, we vacate Gray's
conviction for aggravated assault, reform the judgment to delete that conviction, and
otherwise affirm the trial court's judgment as reformed.
I. Legal and Factual Sufficiency of the Evidence To Support a Deadly Weapon 
 Finding

          Texas law requires the trial court to enter an affirmative finding in the trial court's
judgment "when it is shown that a deadly weapon . . . was used or exhibited during the
commission of a felony offense . . . ." Tex. Code Crim. Proc. Ann. art. 42.01, § 1(21)
(Vernon Supp. 2004–2005); see also Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)
(Vernon Supp. 2004–2005) (deadly weapon finding criteria). Gray contends, in his first
point of error, the evidence is both legally insufficient and factually insufficient to support
the jury's finding that he used or exhibited a deadly weapon during the commission of the
alleged offenses. Even though Gray's point is multifarious and subject to being overruled
on that basis alone,


 we disagree that the evidence is insufficient to support the deadly
weapon finding on each charge. 
          The statement of facts section of Gray's own appellate brief contains this assertion: 
"[a]s Gillespie attempted to handcuff Gray, he resisted and reached down and obtained her
weapon." (Emphasis added.) In addition to this unintended concession, there is evidence
supporting a deadly weapon finding. 
          Gillespie testified that, during the struggle with Gray, she believed he had
possession of the gun, even though she was still touching the gun. She also testified Gray
was attempting to release the gun's safety mechanism while he was trying to fire the
weapon at her. Gillespie was, however, able to prevent Gray from shooting her. She also
told the jury that, because Gray had the gun so close to her head, Gillespie was thinking,
"[D]on't let him shoot me in the head and that way I may survive." 
          Other witnesses to the crimes testified Gray had control over the gun when he
assaulted Gillespie by pushing her to the ground. Licia Rector testified that she saw Gray
with the gun, that she observed Gray and Gillespie wrestling for the gun, and that Gillespie
had blood coming from her nose and mouth as a result of Gray's assault. Patrick Coughlin
told the jury that Gray had "almost complete control" over the gun and was able to point
the gun just before Coughlin successfully pulled it away from the two. 
          Therefore, even if we disregarded Gray's concession in his brief that he obtained
Gillespie's weapon, we cannot say the evidence is insufficient to support a deadly weapon
finding when that evidence is examined using the usual standards of review for factual and
legal sufficiency. See Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004)
(factual sufficiency); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (legal
sufficiency). We overrule Gray's first point of error.
II. Double Jeopardy
          In his second point of error, Gray contends his convictions for both attempted capital
murder and aggravated assault violate the Double Jeopardy Clauses of both the federal
and state constitutions. Gray raises both issues under a single point of error. 
Attorneys, when briefing constitutional questions, should carefully separate
federal and state issues into separate grounds and provide substantive
analysis or argument on each separate ground. If sufficient distinction
between state and federal constitutional grounds is not provided by counsel,
this Court may overrule the ground as multifarious. 

Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991). Given the
fundamental, federal constitutional issues at stake and our reasoning set forth below, we
decline to overrule Gray's second point of error as multifarious. However, because Gray
provides no separate argument or authority for his state constitutional claim, we will
address this issue only as it relates to his federal claim. See Luquis v. State, 72 S.W.3d
355, 364 (Tex. Crim. App. 2002); Lacour v. State, 21 S.W.3d 794, 795 (Tex.
App.—Beaumont 2000, no pet.).
          A. Though Not Raised Below, Double Jeopardy May Be Raised for the First Time 
 on Appeal

          The State contends Gray may not raise a double jeopardy argument for the first time
on direct appeal and cites Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim. App. 2000), for
support of its position. In Gonzalez, the Texas Court of Criminal Appeals wrote "a double
jeopardy claim may be raised for the first time on appeal or even for the first time on
collateral attack when the undisputed facts show the double jeopardy violation is clearly
apparent on the face of the record and when enforcement of usual rules of procedural
default serves no legitimate state interests." Id. at 643 (emphasis added) (footnotes
omitted). The State's claim is not supported by caselaw.
          B. The Federal Double Jeopardy Clause Embodies Several Concepts
          The Double Jeopardy Clause of the Fifth Amendment embodies several concepts: 
it protects a person from being twice prosecuted for the same offense, it precludes the
state from prosecuting someone for the same offense or a lesser included offense after a
jury has acquitted the accused, and it bars punishing a person more than once for the
same offense. Nickerson v. State, 69 S.W.3d 661, 670 (Tex. App.—Waco 2002, pet. ref'd)
(citing Monge v. California, 524 U.S. 721, 727–28 (1998)); see also U.S. Const. amend. V;
Hutchins v. State, 992 S.W.2d 629, 631 (Tex. App.—Austin 1999, pet. ref'd, untimely
filed).


 Gray now invokes that third protection.
          C. Double Jeopardy Bars Gray's Conviction for Aggravated Assault
          "To determine whether offenses are the same for jeopardy purposes, we must
construe the statutory provisions in question to discern 'the allowable unit of prosecution,'
which is 'a distinguishable discrete act that is a separate violation of the statute.'" 
Nickerson, 69 S.W.3d at 671 (quoting Ex parte Hawkins, 6 S.W.3d 554, 556 (Tex. Crim.
App. 1999)). The State charged Gray with both aggravated assault and attempted capital
murder in the same indictment. Regarding attempted capital murder, the indictment
alleged,
ANDREW LEE GRAY, did then and there, with the specific intent to commit
the offense of Capital Murder of Sherry Gillespie, a peace officer, who was
acting in the lawful discharge of an official duty, to-wit: attempting the lawful
arrest of the said ANDREW LEE GRAY and the said ANDREW LEE GRAY
knew Sherry Gillespie was a peace officer and did do an act, to-wit: struggle
and disarm said officer and point the said firearm at Sherry Gillespie, which
act amounted to more than mere preparation that intended but failed to
effect the commission of the offense intended.
 
The State's theory of the attempted capital murder was that Gray struggled with Gillespie
and pointed her service firearm at Gillespie, but failed in his attempt to discharge the
weapon. To prove that offense, the State needed to show Gray took Gillespie's gun and
attempted to use that gun to kill Gillespie by trying to point and fire the gun at her. 
          The indictment next alleged the offense of aggravated assault:
ANDREW LEE GRAY, did then and there intentionally or knowingly cause
bodily injury to Sherry Gillespie by struggling with and pushing the said
Sherry Gillespie down and the said ANDREW LEE GRAY did then and there
know that the said Sherry Gillespie was then and there a public servant,
to-wit: a peace officer with the Linden Police Department, and that the said
Sherry Gillespie was then and there lawfully discharging an official duty,
to-wit: attempting to lawfully detain or arrest the said ANDREW LEE GRAY.
 
          And it is further presented in and to said Court that a deadly weapon,
to-wit: a firearm, was exhibited or used during the commission of the
aforesaid offense.

The State's theory of the charge for aggravated assault was that Gray used or exhibited
a deadly weapon while "struggling with and pushing the said Sherry Gillespie down," and
that Gillespie was a public servant who was lawfully discharging her duties at the time of
that assault. See Tex. Pen. Code Ann. § 22.02(a)(2).


 To prevail on the aggravated
assault charge, the State needed to prove Gray used or exhibited a deadly weapon during
the time he was assaulting Gillespie. 
          The overwhelming testimony from all of the witnesses was that Gray pointed the gun
at Gillespie during the struggle over the gun. Thus, the factual evidence in the record
before us does not affirmatively demonstrate any single moment in time—or a discrete act
or behavior—where Gray's conduct of pointing the gun at Gillespie (the essence of the
attempted capital murder charge) was distinguishable from his conduct of assaulting and
struggling with Gillespie over the gun (the essence of the aggravated assault charge). In
fact, Rector and Coughlin both described the struggle as lasting for a few seconds. In light
of such an absence of evidence regarding a distinguishable "discrete act," the Double
Jeopardy Clause precludes the State from securing convictions for both attempted capital
murder and aggravated assault.
          Our conclusion might be different if the evidence had shown that Gray had
maintained independent control of the weapon after the struggle concluded and had then
pointed it at Gillespie. But that hypothetical situation is not consistent with the evidence
in this case. Accordingly, the federal Double Jeopardy Clause prohibits the State from
securing two life sentences for the same criminal conduct by Gray.
          D. The Proper Remedy Is To Vacate the Aggravated Assault Conviction
          "The proper remedy for the imposition of multiple punishments for the same offense
is to affirm the judgment in the cause involving the most serious offense and to set aside
the conviction for the lesser offense." Johnson v. State, 6 S.W.3d 323, 324 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref'd) (referencing Ex parte Pena, 820 S.W.2d 806,
808–10 (Tex. Crim. App. 1991); Johnson v. State, 903 S.W.2d 496, 499 (Tex. App.—Fort
Worth 1995, no pet.)). 
          The offense of attempted capital murder is a first degree felony. See Tex. Pen.
Code Ann. § 15.01(d) (Vernon 2003) (penalty for criminal attempt is one category lower
than offense attempted); Tex. Pen. Code Ann. § 19.03(a)(1) (murder of police officer acting
in line of duty is capital crime); Tex. Pen. Code Ann. § 12.31–.32 (Vernon 2003) (capital
and first degree felony punishments); Wilson v. State, 810 S.W.2d 807, 812 (Tex.
App.—Houston [1st Dist.] 1991, no pet.). The offense of aggravated assault on a public
servant is also a first degree felony. See Tex. Pen. Code Ann. § 22.02(b)(2) (Vernon Supp.
2004–2005). Thus, we cannot distinguish between the two merely by examining the
applicable penological characterization. However, we feel safe in assuming that public
policy would consider the attempted taking of a peace officer's life to be more egregious
than causing that same officer to suffer bruises and abrasions to her arms and knee. 
Accordingly, we vacate Gray's conviction for aggravated assault and reform the trial court's
judgment to reflect only convictions for attempted capital murder and taking a weapon from
a peace officer. 
 

          We otherwise affirm the trial court's judgment.

 
                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      April 11, 2005
Date Decided:         July 7, 2005


Do Not Publish