**Reversed and Rendered; Opinion Filed June 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01126-CV

## CITY OF RICHARDSON, Appellant
## V.
## RUSSELL J. BOWMAN, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-00289**

## OPINION

Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Stoddart

After receiving a notice of violation of the red light camera ordinance, Russell J. Bowman filed suit in district court to enjoin enforcement of the ordinance and for a declaration that the ordinance and enabling statute are unconstitutional. Alternatively, he alleged the City of Richardson failed to comply with the enabling statute when it installed the red light camera at issue. The City filed a partial plea to the jurisdiction and both parties filed motions for summary judgment. The trial court denied the City's partial plea to the jurisdiction and motion for summary judgment and granted Bowman's motion.

The City appeals arguing (1) Bowman failed to exhaust administrative remedies on the claim for failure to comply with the enabling statute, (2) the City was not required to comply with the provision of the enabling statute cited by Bowman, and (3) the ordinance and enabling statute

are constitutional. We conclude Bowman was required to exhaust his administrative remedies regarding compliance with the enabling statute and that the ordinance and enabling statute are constitutional. Accordingly, we vacate the denial of the partial plea to the jurisdiction, reverse the trial court's judgment, and render judgment dismissing Bowman's claim based on non-compliance with the enabling statute for want of jurisdiction and denying Bowman's claim for a declaration that the ordinance and enabling statute are unconstitutional.

## BACKGROUND

In 2005, the City entered into a contract with Redflex Traffic Systems, Inc. to install the red light camera system involved in this case. In 2007, the Legislature enacted Chapter 707 of the transportation code authorizing municipalities to adopt red light camera systems. *See* TEX. TRANSP. CODE ANN. §§ 707.001–.019 (West 2011 & Supp. 2017). Pursuant to this enabling statute, the City adopted a red light camera ordinance on September 10, 2007. Richardson, Tex., Code of Ordinances art. VII, §§ 22.185–.193 [hereinafter Ordinance]. For convenience, we refer to Chapter 707 and the Ordinance collectively as the Camera Laws. The Camera Laws provide that an owner has the right to contest the imposition of a civil penalty in an administrative adjudicative hearing. TEX. TRANSP. CODE ANN. §§ 707.011(c)(10), .014; Ordinance §§ 22-187(c)(10), 22-189. The owner may appeal a finding of liability by the hearing officer to the municipal court for trial de novo. TEX. TRANSP. CODE ANN. § 707.016; Ordinance § 22-191.

On November 12, 2012, a red light camera recorded Bowman's vehicle entering an intersection when the traffic signal was red. According to his summary judgment evidence, Bowman did not know about the violation until December 1, 2014, when he was notified of a registration hold on his vehicle for failing to pay the civil penalty associated with the 2012 violation. Bowman contacted the City and received a notice of the November 12, 2012 violation

on December 4, 2014.[1]  The notice stated that, as owner of the vehicle, Bowman was responsible for a civil penalty of $75 and a $25 fee for late payment.

In response, on December 12, 2014, Bowman sent a letter to the City requesting an administrative hearing as authorized by section 707.015 of the transportation code.[2]  Bowman requested that the hearing be before a jury and that the hearing officer declare Chapter 707 unconstitutional on several grounds.  Bowman also requested the City produce several documents about the red light camera system, including an engineering study for the intersection at issue and reports to a citizens advisory committee.

Before an administrative hearing was scheduled, Bowman filed this suit for declaratory judgment and an injunction against enforcement of the Ordinance.  Bowman sought a declaration that the Camera Laws and government code section 29.003(g) are unconstitutional.[3]  *See* TEX. GOV'T CODE ANN. § 29.003(g) (West Supp. 2017).  In the alternative, Bowman alleged the City could not enforce the Ordinance against him because the City failed to comply with subsections 707.003(c) and (e), which require the City to conduct an engineering study and present the study to a citizens advisory committee before installing a red light camera.  We refer to the alternative claims as the Compliance Claims.

The City filed a partial plea to the jurisdiction regarding the Compliance Claims.  It argued the trial court did not have jurisdiction over those claims because Bowman failed to exhaust his

---

[1] Ordinance section 22-187(b) requires the City to mail a notice of violation to the owner not later than the thirtieth day after the date of the violation.  The record here does not show whether the notice was mailed within this time.  There is only Bowman's evidence that he did not receive a notice of violation until December 4, 2014.

[2] TEX. TRANSP. CODE ANN. § 707.015 (permitting written request for administrative hearing within thirty days of actual receipt of notice).

[3] In addition to the City, Bowman named the Attorney General as a party and served him with a copy of the petition.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.").  Bowman nonsuited the Attorney General before an answer was filed, and the Attorney General has not otherwise appeared in this case.

administrative remedies by raising the claims with the hearing officer. In addition, both parties filed motions for summary judgment. Without specifying the grounds for its decision, the trial court denied the City's partial plea to the jurisdiction and motion for summary judgment, granted Bowman's motion for summary judgment, and rendered judgment that (1) Bowman is not liable for the civil penalty, (2) the City notify the department of motor vehicles to remove the registration hold on Bowman's vehicle, and (3) Bowman recover attorney's fees from the City.

## STANDARD OF REVIEW

We review the trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts affirmatively showing the court's jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.* When the parties submit evidence regarding the jurisdictional question, we consider the evidence under a summary judgment type standard. *See id.* at 228.

We review a grant of summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 422 (Tex. 2010). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When both parties move for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we

review the summary judgment evidence presented by both parties and determine all questions presented. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

ANALYSIS

### A. Plea to the Jurisdiction

In its first issue, the City argues Bowman failed to exhaust his administrative remedies relating to the Compliance Claims because the administrative hearing officer has exclusive jurisdiction to determine Bowman's liability for the civil penalty. The City contends that because Bowman did not exhaust these administrative remedies, the trial court did not have jurisdiction to consider Bowman's Compliance Claims and should have granted the partial plea to the jurisdiction. The City argues in its second issue that, if the trial court had jurisdiction over the Compliance Claims, the City was not required to comply with section 707.003 because the contract for the installation of the red light camera system was entered into before the effective date of Chapter 707.

### 1. Exclusive Jurisdiction and Exhaustion of Administrative Remedies

The concepts of exclusive jurisdiction and the doctrine of exhaustion of administrative remedies are closely related. When the Legislature expressly or impliedly grants an administrative agency sole authority to make an initial determination in a matter, the agency has exclusive jurisdiction over the matter. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). "[I]f an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action." *Subaru of Am.*, 84 S.W.3d at 221. This is commonly known as the exhaustion-of-administrative-remedies doctrine. *See Marquez*, 487 S.W.3d at 544. Until a complaining party has exhausted administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss without prejudice those claims within the agency's exclusive

–5–

jurisdiction. *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 675 (Tex. 2006) (per curiam); *Subaru of Am.*, 84 S.W.3d at 221. Only after exhaustion has occurred may a plaintiff seek judicial review of the administrative decision, and then he may do so "only at the time and in the manner designated by statute." *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000).

An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the Legislature "intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624–25 (Tex. 2007) (orig. proceeding); *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding) ("An agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute."). Exclusive jurisdiction is a question of statutory interpretation. *See Marquez*, 487 S.W.3d at 544. Our primary goal in construing a statute is to give effect to the Legislature's intent. *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We defer to the plain meaning of a statute as the best indication of the Legislature's intent unless a different meaning is apparent from the context of the statute or the plain meaning would yield absurd results. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Moreover, we determine legislative intent from the entire act, not merely from isolated portions. *Ruttiger*, 381 S.W.3d at 454; *TGS–NOPEC*, 340 S.W.3d at 439. Therefore, we look to the operative statute to determine whether it expressly or impliedly grants the administrative agency sole authority to make an initial determination of disputes within the agency's regulatory expertise. *See Marquez*, 487 S.W.3d at 544; *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).

### 2. Application

With these principles in mind, we turn to the language of the statute. Chapter 707 of the

Texas Transportation Code authorizes local authorities[4] to enact ordinances to impose civil penalties on owners of vehicles photographed running a red light by a red light camera. *See* TEX. TRANSP. CODE ANN. § 707.002; *see also id*. § 544.007(d) (West Supp. 2017) (requiring operator of motor vehicle to stop when facing a steady red signal). The civil penalty may not exceed $75 and a late payment penalty may not exceed $25. *Id*. § 707.007.

Section 707.003 authorizes a city to contract for the installation, operation, administration, and enforcement of the traffic signal enforcement system. TEX. TRANSP. CODE ANN. § 707.003. If the city contracts for the administration and enforcement of the system, it may not agree to pay the contractor a percentage of or a dollar amount from each civil penalty collected. *Id*. § 707.003(b). Before installing a system at an intersection approach, the city must conduct a traffic engineering study of the intersection and report the results to a citizens advisory committee. *Id*. § 707.003(c)–(e). A city may not impose a civil penalty on an owner of a motor vehicle if the city fails to comply with subsection (b) or (c). *Id*. § 707.003(f). The city must install signs at the intersection clearly indicating the presence of a photographic monitoring system. *Id.* § 707.003(g). Section 707.003, however, "applies only to a contract entered into on or after the effective date of [the] Act." Act of May 27, 2007, 80th Leg., R.S., ch. 1149, § 9, 2007 Tex. Gen Laws 3924, 3931; *see Ward v. ACS State & Local Sols., Inc.*, 328 S.W.3d 648, 653 (Tex. App.—Dallas 2010, no pet.). The City contends section 707.003 does not apply in this case because it entered into a contract with Redflex before the effective date of Chapter 707.

Chapter 707 requires that an ordinance adopted by a city provide that the person subject to a civil penalty is entitled to a hearing, provide the period in which the hearing must be held, and provide for appointment of a hearing officer with authority to administer oaths and issue orders

---

[4] "Local authority" means a county, municipality, or other local entity authorized to enact traffic laws. TEX. TRANSP. CODE ANN. § 707.001(1); *id*. § 541.002(3).

compelling the attendance of witnesses and the production of documents. TEX. TRANSP. CODE ANN. § 707.009. The ordinance must designate the department or agency responsible for enforcement and administration of the ordinance or provide that the contractor is responsible for enforcement and administration of the ordinance. *Id.*

A notice of a violation of the ordinance must contain specific information about the violation, including a copy of the recorded image of the violation, the amount of the civil penalty, and the time for paying or contesting the civil penalty, and the notice must notify the owner of the vehicle of the owner's right to contest the imposition of the civil penalty at an administrative adjudication hearing. *Id.* § 707.011. It must also state that the civil penalty may be contested by submitting a written request for an administrative adjudication hearing before the deadline. *Id.*

Chapter 707 establishes an administrative adjudication hearing process for challenging liability for the civil penalty and permits a de novo appeal to the appropriate municipal or justice court after a finding of liability. *Id.* §§ 707.014, 707.016. A person receiving notice of a violation may contest the civil penalty by filing a written request for an administrative hearing within thirty days after the notice was mailed or received. *Id.* §§ 707.014(a), 707.015. The hearing officer designated by the city shall conduct the hearing, where issues must be proven by a preponderance of the evidence. *Id.* § 707.014(c), (d). The statute authorizes the use of affidavits regarding the reliability of the photographic traffic signal enforcement system. *Id.* § 707.014(e), (f). The hearing officer shall enter a written finding of liability or no liability for the civil penalty at the conclusion of the hearing. *Id.* § 707.014(g). An owner who fails to timely pay the civil penalty or request an administrative hearing, or to appear for the administrative hearing after one is timely requested, admits liability for the full amount of the civil penalty and waives the right to appeal. *Id.* § 707.012.

After the administrative hearing, the owner may appeal a finding of liability by trial de

–8–

novo to the justice court of the county where the local authority is located or to the municipal court if the local authority is a city. *Id.* § 707.016(a), (e). The appeal must be filed before the thirty-first day after the hearing officer's finding and be accompanied by payment of costs of the court. *Id.* § 707.016(b). An appeal stays enforcement of the civil penalty. *Id.* § 707.016(d). The owner "shall file a notarized statement of personal financial obligation to perfect the owner's appeal." *Id.* A municipal court has "exclusive appellate jurisdiction" within the city's territorial limits of cases arising under Chapter 707. TEX. GOV'T CODE ANN. § 29.003(g). A justice court has original jurisdiction of cases arising under Chapter 707 outside a municipality's territorial limits. *Id.* § 27.031(a)(4) (West Supp. 2017).

Chapter 707 further provides that if the owner is delinquent in paying a civil penalty, the county assessor-collector or the department of motor vehicles may refuse to register the vehicle involved in the violation. TEX. TRANSP. CODE ANN. § 707.017 (West Supp. 2017). However, the imposition of a civil penalty under Chapter 707 is not a conviction and may not be considered a conviction for any purpose, an arrest warrant may not be issued for failure to pay a civil penalty, and a civil penalty may not be recorded on the owner's driving record. *Id.* §§ 707.018, .019. Nor may the city provide information about a civil penalty to a credit bureau. *Id.* § 707.003(h).

Based on its detailed structure and requirements and the express creation of an administrative procedure to determine liability, we conclude Chapter 707 creates a pervasive regulatory scheme indicating the Legislature's intent that claims arising out of the use of red light camera systems would be resolved at the administrative level and that the administrative hearing officer has the sole authority to make an initial determination in a dispute involving the use of the camera system. *See In re Entergy Corp.*, 142 S.W.3d at 321; *In re Sw. Bell Tel. Co.*, 235 S.W.3d at 624–25. Other courts that have addressed the issue agree. *See City of Willis v. Garcia*, 523 S.W.3d 729, 742 (Tex. App.—Beaumont 2017, pet. filed); *Edwards v. City of Tomball*, 343

–9–

S.W.3d 213, 221–22 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Hunt v. City of Diboll*, No. 12-17-00001-CV, 2017 WL 7663041, at \*6–8 (Tex. App.—Tyler Nov. 8, 2017, pet. filed) (reversing order granting plea to the jurisdiction where city failed to publish red light camera ordinance before adoption as required by city charter). Therefore, the Legislature granted exclusive jurisdiction to the administrative hearing officer to make an initial determination of liability, and Bowman was required to exhaust his administrative remedies on his Compliance Claims.

Bowman argues exhaustion is not required where the agency's action is without authority or in violation of a statute, relying on *City of Sherman v. Public Utility Commission of Texas*, 643 S.W.2d 681, 686 (Tex. 1983). According to Bowman, the City's attempt to impose a civil penalty on him is without authority or in violation of statute because the City did not conduct an engineering study and present it to a citizens advisory committee before installing the red light camera. *See* TEX. TRANSP. CODE ANN. § 707.003(c), (e).

We do not agree that *City of Sherman* supports Bowman's position. In *City of Sherman*, the supreme court concluded the public utility commission did not have jurisdiction over a municipally owned water utility because the Public Utility Regulatory Act expressly excluded municipal corporations from the definition of public utility. *See City of Sherman*, 643 S.W.2d at 684. Here, Chapter 707 does not exclude or limit the jurisdiction of the administrative hearing officer when a city fails to conduct an engineering study. Rather, it prohibits the city from imposing a civil penalty if the city violates the requirement. TEX. TRANSP. CODE ANN. § 707.003(f) ("A local authority may not impose a civil penalty under this chapter on the owner of a motor vehicle if the local authority violates Subsection (b) or (c)."). This statute does not deprive the hearing officer of jurisdiction. Indeed, in making the determination of whether the owner is liable for a civil penalty under Chapter 707, the hearing officer must necessarily consider whether section

707.003 applies[5] and whether "the local authority [has] violate[d] Subsection (b) or (c)." *Id*.

§§ 707.003(f), .014(g) (authorizing hearing officer to enter a finding of liability or no liability for

the civil penalty).

Both *Edwards* and *City of Willis* rejected the assertion that a city's alleged failure to

conduct a traffic engineering study excused the owner from exhausting administrative remedies.

One of the procedural complaints raised in *Edwards* was that "Tomball did not conduct the traffic

study required by section 707.003(c)." *Edwards*, 343 S.W.3d at 219. The court of appeals rejected

the argument that failure to conduct the study, as well as other procedural problems, rendered the

administrative hearing procedure void:

> [Appellant] argues that the manner in which Tomball enforced the Red Light
> Camera Ordinance against her does not fully comply with all of the procedural
> requirements established by Chapter 707 of the Transportation Code and the
> Tomball Red Light Camera Ordinance. We hold these deficiencies do not render
> those efforts void, but voidable. We further hold that if appellant wished to contest
> imposition of the civil penalty for violating Tomball's Red Light Camera Ordinance
> based on these procedural deficiencies, she was required to do so through the
> administrative procedure established by Chapter 707 of the Texas Transportation
> Code and the Red Light Camera Ordinance and if still dissatisfied, she was required
> to appeal to Tomball Municipal Court for a trial de novo.

*Id*. at 222 (citations omitted).

In *City of Willis*, the owners asserted claims almost identical to those of Bowman in this

case, including the claim that the city failed to conduct an engineering study as required by section

707.003. *See City of Willis*, 523 S.W.3d at 732, 736. The court of appeals concluded:

> [T]aking the allegations in Plaintiffs' pleading as true and assuming without
> deciding that the City of Willis failed to conduct a traffic engineering study as
> provided for in section 707.003I [sic] before it installed the red light cameras, we
> conclude that such irregularity does not allow a party to completely circumvent or
> ignore the administrative procedures in the City's Red Light Camera Ordinance.

*Id*. at 742. Specifically, the Beaumont Court of Appeals concluded that even if the city failed to

---

[5] As indicated above, section 707.003 does not apply to contracts entered into before the effective date of the act. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1149, § 9, 2007 Tex. Gen Laws 3924, 3931.

–11–

conduct the required engineering study,

> the failure to strictly comply with that provision of the statute would, under the facts of this case, be insufficient to trigger the ultra vires exception to the exhaustion requirement because such allegations would be nothing more than allegations that the officials have failed to "fully comply" with regulatory requirements, which would not make the actions of the official ultra vires.

*Id.* at 744.

We agree with our sister courts on this point.[6] The mere claim that an administrative agency acted outside its authority does not authorize litigation before administrative remedies are exhausted, "nor does failure to perfectly comply with all of the intricacies of the administrative process necessarily constitute extra-jurisdictional action by an agency." *Appraisal Review Bd. of Harris Cty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The alleged failure of the City to conduct a traffic engineering study and present it to a citizens advisory committee does not exempt Bowman from exhausting his administrative remedies. *See City of Willis*, 523 S.W.3d at 744; *Edwards*, 343 S.W.3d at 222.

Next, Bowman argues that the administrative procedures in Chapter 707 do not create exclusive jurisdiction because section 707.014(a) says an owner who desires to challenge the civil penalty "may" contest the violation through an administrative hearing. *See* TEX. TRANSP. CODE ANN. § 707.014(a) ("A person who receives a notice of violation under this chapter may contest the imposition of the civil penalty specified in the notice of violation by filing a written request for an administrative adjudication hearing."). Bowman asserts that because the term "may" is permissive, an owner wanting to contest the civil penalty is not required to request an administrative hearing, but may file suit in district court to challenge the penalty.

The words "shall" and "must" in a statute are generally understood as mandatory terms.

---

[6] As noted below, we disagree with the Beaumont court's conclusion that the exhaustion requirement applies to the pure questions of law raised in Bowman's constitutional challenges to the Camera Laws. *See City of Willis*, 523 S.W.3d at 744–45.

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Conversely, the word "may" is generally understood as indicating discretion or granting permission. TEX. GOV'T CODE ANN. § 311.016(1) (West 2013). But these words must be read in context. *Id.*[7] Rather than focusing on the word "may" in isolation, we consider the statute as a whole. *See Ruttiger*, 381 S.W.3d at 454; *Wilkins*, 47 S.W.3d at 493.

Section 707.014(a) states a person may contest the imposition of the civil penalty, but it provides only one method of doing so: "by filing a written request for an administrative hearing." TEX. TRANSP. CODE ANN. § 707.014(a). It further mandates that the "request for a hearing *must be filed* on or before the date specified in the notice of violation," which may not be less than thirty days after the notice was mailed. *Id.* (emphasis added). In determining the Legislature's intent, we must consider the statutory consequence for failing to contest the civil penalty by requesting an administrative hearing within the time allowed. *See Wilkins*, 47 S.W.3d at 495. Section 707.012 provides that a person who fails to pay the civil penalty or "to contest liability for the penalty in a timely manner or who requests an administrative hearing . . . and fails to appear at that hearing" admits liability for the full amount of the civil penalty stated in the notice and waives the person's right to appeal the imposition of the civil penalty. TEX. TRANSP. CODE ANN. § 707.012.

The consequences for failing to timely request an administrative hearing indicate the Legislature intended the statute to be mandatory. If, as Bowman suggests, an owner may contest liability for the civil penalty by filing suit in a district court, possibly long after the deadline to request an administrative hearing, the owner could easily avoid the admission of liability established by the Legislature as the consequence for failing to timely request an administrative

---

[7] *See* TEX. GOV'T CODE ANN. § 311.011 (West 2013) (words and phrases must be "read in context and construed according to the rules of grammar and common usage"); *id*. § 311.016 ("unless the context in which the word or phrase appears necessarily requires a different construction," the term "may" creates discretionary authority or grants permission or a power).

–13–

hearing or appear at a requested hearing. This would render section 707.012 meaningless. Accordingly, we reject Bowman's assertion that an owner who wishes to challenge the civil penalty may, but is not required to, request an administrative hearing. We conclude that if an owner desires to contest liability, he must do so in accordance with the method established by the statute: filing a timely written request for an administrative hearing. *See id*. § 707.014(a).

In a supplemental brief, Bowman for the first time argues he was not required to exhaust administrative remedies because the justice court has exclusive jurisdiction over civil cases where the amount in controversy is $200 or less. *See* TEX. CONST. art. V, § 19 ("Justice of the peace courts shall have . . . exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less, and such other jurisdiction as may be provided by law."). Therefore, he contends, neither the hearing officer nor the municipal court have jurisdiction over red light camera violations because the civil penalty is limited to $75 plus a possible $25 late fee.

Bowman's new argument, however, does not support the trial court's denial of the plea to the jurisdiction. Rather, it indicates the district court lacks jurisdiction over Bowman's Compliance Claims because the amount in controversy is below the jurisdictional minimum of the district court. *See* TEX. CONST. art. V, § 8 (district court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, "except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body"); *id*. § 19; *Sultan v. Mathew*, 178 S.W.3d 747, 756 n.24 (Tex. 2005) (Hecht, J., dissenting) (noting split in courts of appeals over whether constitutional jurisdictional minimum amount in controversy is $200.01 or $500.00); *Arnold v. West Bend Co.*, 983 S.W.2d 365, 366 n.1 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Were we to accept Bowman's argument, the result would be the same—the district court would lack subject matter jurisdiction over the Compliance Claims. Thus, Bowman's belated argument does

not change the outcome of this appeal.

Be that as it may, the Legislature has constitutional power to create such other courts as it deems necessary and to conform the jurisdiction of the district and inferior courts thereto. TEX. CONST. art. V, § 1 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."); *Jordan v. Crudgington*, 231 S.W.2d 641, 644–45 (Tex. 1950) (discussing the history of article V, section 1 of the constitution); *Reasonover v. Reasonover*, 58 S.W.2d 817, 819 (Tex. 1933) (holding article V, section 1 authorizes Legislature to take from the district court "the exclusive nature of its jurisdiction over the subjects mentioned in section 8, article 5, and permits the Legislature to give jurisdiction over them also to other courts"). The Legislature has preserved the jurisdiction of justice courts for Chapter 707 cases arising outside the territorial limits of a city. TEX. GOV'T CODE ANN. § 27.031(a)(4). Accordingly, we reject Bowman's argument.

### 3. Summary

The supreme court has held: "The Texas Constitution expressly allows the Legislature to bestow exclusive original jurisdiction on administrative bodies." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) (citing TEX. CONST. art. V, § 8). There is no question the Legislature intended to do so here. We conclude the Legislature granted the hearing officer sole authority to make an initial determination in a dispute involving red light camera ordinances, thereby establishing exclusive jurisdiction. *Duenez*, 201 S.W.3d at 675; *In re Entergy Corp.*, 142 S.W.3d at 321. Therefore, Bowman was required to exhaust administrative remedies regarding his claim that the City did not comply with subsections 707.003(c) and (e). *See Duenez*, 201 S.W.3d at 675; *see also* TEX. TRANSP. CODE ANN. § 707.003(c), (e). We sustain the City's first issue. We need not address the City's second issue. *See* TEX. R. APP. P. 47.1.

## B. Constitutionality of the Statute

The City argues in its third issue the trial court erred by granting Bowman's motion for summary judgment because Bowman failed to overcome the presumption of constitutionality and the Camera Laws are constitutional.

### 1. Standard of Review

When reviewing the constitutionality of a statute, we begin with a presumption that it is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) (in enacting statute, it is presumed that compliance with state and federal constitutions is intended). The party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. *Walker*, 111 S.W.3d at 66. A party may show that the statute is unconstitutional on its face or as applied to that party. *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 777 (Tex. App.—Dallas 2008, pet. denied) (citing *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995)). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id*. To sustain an "as- applied" challenge, the party must show that the statute, while generally constitutional, is unconstitutional when applied to that particular person or set of facts. *Garcia*, 893 S.W.2d at 518 n.16.

### 2. Constitutional Challenges Raised

Bowman raised several constitutional challenges in his motion for summary judgment. We briefly summarize these challenges as follows:

(1) the Camera Laws violate the rights of a defendant in a criminal prosecution provided by article I, section 10;

(2) the Ordinance violates article XI, section 5 because it does not require the same proof as required to impose criminal liability on the owner of a vehicle for a traffic violation;

(3) by depriving owners of the rights afforded by article I, section 10, the Camera Laws violate article I, section 29, which provides that the bill of rights shall be

–16–

inviolate;

(4) the Camera Laws violate the right to substantive due process under article I, section 19, by creating an irrebuttable presumption of liability;

(5) the Camera Laws violate the right to jury trial provided in article I, section 15;

(6) The Camera Laws violate the open courts provision of article I, section 13 by imposing an unreasonable financial barrier to judicial review; and

(7) the grant of "exclusive appellate jurisdiction" to the municipal court violates the constitutional grant of appellate jurisdiction to the courts of appeal and the supreme court in article V, sections 3 and 6.

These are all facial challenges to the Camera Laws. Therefore, Bowman must show that the statute, by its terms, always operates unconstitutionally. *Johnson ex rel. MAII Holdings, Inc.*, 247 S.W.3d at 777. In addition, Bowman raises an as-applied challenge regarding his substantive due process claim. To sustain this challenge, Bowman must show that the statute is unconstitutional as applied to him. *Id*.

### 3.    Exhaustion of Administrative Remedies as to Questions of Law

Relying on *City of Willis*, the City asserted at oral argument that Bowman's constitutional challenges to the Camera Laws are within the exclusive jurisdiction of the administrative hearing officer and subject to the requirement of exhaustion of administrative remedies. In *City of Willis*, the court held that constitutional challenges similar to those raised by Bowman were subject to the requirement of exhaustion of administrative remedies. *See City of Willis*, 523 S.W.3d at 744–45. The court reached this conclusion after noting that the supreme court has, on some occasions, required exhaustion of administrative remedies before a party may assert claims under the Texas constitution. *Id*. (citing *Marquez*, 487 S.W.3d at 552 n.9). We conclude, however, that exhaustion of administrative remedies is not required in this case because the constitutional challenges raise pure questions of law that are outside the jurisdiction of the administrative hearing officer.

In *Marquez*, parents claimed the school district's allocation of funds among schools in the district deprived them of the constitution's guaranties of equal rights and an efficient system of

public free schools. *Marquez*, 487 S.W.3d at 543. The supreme court explained that it has never globally exempted claims based on the Texas Constitution from the exhaustion of remedies doctrine. *Id.* at 552 n.9. The court noted that where the complaint is that the school board's conduct or decision violates only the person's state or federal constitutional rights, and not the school laws of the state, exhaustion of administrative remedies is not required by the education code. *Id.* at 552–53. But if the constitutional claim, like those of the parents, is ancillary to and supportive of a complaint about the school board's handling of an employment contract or application of school law, then the claim results from a violation of school laws and exhaustion is required unless another exception applies. *Id.* One such exception is that "the doctrine of exhaustion of administrative remedies does not apply when there are purely questions of law involved." *Id.* at 557 & n.13 (quoting *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986)).

Here, Bowman's constitutional claims differ from those in *Marquez*. Bowman challenges the constitutionality of the Camera Laws on their face. He is not challenging the actions of the City under the Ordinance and Chapter 707. Rather, he is challenging the validity of the Ordinance and Chapter 707 as they are written.

The supreme court has held that administrative agencies lack the ultimate power of constitutional construction. *City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012). "No Texas agency has been granted the power to engage in constitutional construction, and any such attempt by the legislature to vest such power would raise serious and grave issues of a separation of powers violation." *Id.* (quoting 1 Ronald L. Beal, Texas Administrative Procedure & Practice § 9.3.1[c] (2011)); *see also Edwards*, 343 S.W.3d at 225 (Frost, J., concurring and dissenting) (arguing exhaustion of administrative remedies was not required for claims that ordinance and enabling statute are invalid). Whether a statute or ordinance is unconstitutional on its face is a

pure question of law. *See Marquez*, 487 S.W.3d at 557 n.13; *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) (claim that tax on camper trailers was unconstitutional "need not be brought administratively," but claim that plaintiffs' particular type of trailers were "not taxable" was subject to exhaustion requirement); *Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 542 (Tex. App.—Eastland 1997, no writ) ("A purely constitutional claim is a question of law.").

We conclude that Bowman's challenges to the constitutionality of the Camera Laws in this case present pure questions of law that are outside the exclusive jurisdiction of the hearing officer and are not subject to exhaustion of administrative remedies.

### 4. Civil or Criminal Statute

Three of Bowman's constitutional challenges are based on the premise that running a red light is a crime and neither the Legislature nor the City may impose a civil penalty for such criminal conduct. First, Bowman contends the Ordinance and Chapter 707 fail to provide the same procedural protections as required for criminal prosecutions by article I, section 10 of the constitution: the right to a jury trial, the privilege against self-incrimination, and the right to confront witnesses. TEX. CONST. art. I, § 10. Second, Bowman contends the Ordinance violates article XI, section 5 because it does not require the same proof as required for a criminal prosecution of a vehicle owner for a traffic offense. *Id*. art. XI, § 5 (prohibiting ordinances inconsistent with the constitution or general law enacted by the Legislature). Third, Bowman contends that the Camera Laws deprive owners of rights afforded by article I, section 10, and therefore violate article I, section 29, which provides that the bill of rights "shall forever remain inviolate." *Id.* art. I, § 29. To resolve these challenges, we must determine whether a proceeding under the Camera Laws is a criminal prosecution.

–19–

Bowman argues that, because running a red light is a criminal offense,[8] the Legislature cannot create a civil penalty for the same conduct without providing the same rights and procedures as required for a criminal prosecution. However, courts have recognized that the Legislature may impose both a criminal and a civil sanction for the same act or omission. *Ex parte Poplin*, 933 S.W.2d 239, 243 (Tex. App.—Dallas 1996, pet. ref'd) (citing *United States v. Ursery*, 518 U.S. 267, 292 (1996)). In *Poplin*, we concluded that the administrative suspension of a driver's license was not a criminal penalty barring a subsequent criminal prosecution for driving while intoxicated. *Id*. at 243–44; *see also Ex parte Drake*, 212 S.W.3d 822, 825–27 (Tex. App.—Austin 2006, pet. ref'd) (concluding administrative assessment of surcharge on driver's license renewal based on prior traffic convictions did not constitute double jeopardy).

Bowman responds that this principle does not apply here because the Camera Laws do not impose "both" criminal and civil sanctions. *See* TEX. TRANSP. CODE ANN. § 707.010(b) (civil penalty may not be imposed if operator of vehicle was arrested or issued citation for the same violation). We see no reason why the Legislature may constitutionally impose both a civil and criminal sanction for the same act or omission but is constitutionally prohibited from imposing one but not the other. The authority to impose both a civil and criminal penalty for the same act or omission certainly includes the power to impose one rather than the other. Bowman cites no language from the constitution to support his assertion, nor do we find any supporting authority for the argument. Further, the prohibition on imposing a civil penalty on the owner if the operator received a citation or was arrested for the same violation shows the Legislature intended Chapter 707 to be civil and not criminal.

---

[8] Transportation code section 542.301 provides that a person commits an offense if he performs an act prohibited or fails to perform an act required by Subchapter C, the Rules of the Road. TEX. TRANSP. CODE ANN. § 542.301 (West 2011). The offense is generally a misdemeanor. *Id*. § 542.301(b). Stopping at a red traffic signal is required by section 544.007(d) of the Rules of the Road. *Id*. § 544.007(d).

Proceedings may be civil matters even though they are "incidental to criminal prosecutions and a mechanism to enforce criminal judgments." *Harrell v. State*, 286 S.W.3d 315, 318–19 (Tex. 2009) (inmate withdrawal orders are civil matters); *see also Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146–49 (Tex. 2012) (holding standing, ripeness, and mootness issues in civil rights action on behalf of putative class of members charged with misdemeanor offenses, asserting denial of class member's rights to court-appointed counsel, self-representation, and open-court proceedings, were civil matters, not criminal matters). In *Heckman*, the court explained:

> To determine whether a case is a criminal law matter, we look to the essence of the case to determine whether the issues it entails are more substantively criminal or civil. Criminal law matters include disputes where "criminal law is the subject of the litigation;" such cases include those "which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure." Criminal law matters also include disputes "which arise as a result of or incident to a criminal prosecution."

*Heckman*, 369 S.W.3d at 146 (citing *Harrell*, 286 S.W.3d at 318–19).

In *Harrell*, the supreme court decided "whether a court order directing prison officials to withdraw money from an inmate trust account is a civil or criminal matter and, if civil, what process is due an inmate when such an order is issued." 286 S.W.3d at 316. The court concluded that the withdrawal orders "may be incidental to criminal prosecutions and a mechanism to enforce criminal judgments, but they do not arise over enforcement of a statute governed by the Code of Criminal Procedure." *Id*. at 318. Thus, "withdrawal orders are more civil in nature than criminal." *Id*.

The supreme court's analysis in *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005), is also instructive. The State sought a civil commitment order against Fisher under the Civil Commitment of Sexually Violent Predators Act. Fisher argued he was incompetent to stand trial in the commitment proceeding and lacked the mental ability to understand or comply with the commitment order. *Id*. at 644. The supreme court concluded that a commitment proceeding under

the statute was civil and that Fisher received the process he was due under the United States and Texas Constitutions. *Id.* at 639.

In deciding Fisher's competency-related due process rights, the court was required to determine whether the statute was civil or criminal. *Id.* at 645. Courts must first ascertain whether the Legislature intended the statute to establish a civil proceeding. *Id.* at 646. A court will reject the Legislature's manifest intent only if the party challenging the statute provides "the clearest proof" that the statute is so punitive in either purpose or effect as to negate the Legislature's intent. *Id.* at 647. Courts generally defer to the Legislature's stated intent to establish a civil proceeding. *Id.*

The language of Chapter 707 indicates it is intended as a civil remedy. The Legislature consistently refers to the penalty authorized by Chapter 707 as a "civil penalty." *See* TEX. TRANSP. CODE ANN. §§ 707.001–.019. The Legislature went to some lengths to distinguish the civil penalty from a criminal traffic violation. A city's adoption of a red light camera ordinance does not preclude enforcement of traffic signal violations by citation or arrest as provided in Chapter 543 of the transportation code. *Id.* § 707.010(a). The statute precludes imposition of the civil penalty if the operator of the vehicle was issued a citation and notice to appear or arrested for the same violation as recorded by the red light camera. *Id.* § 707.010(b). Section 707.018 provides that the imposition of a civil penalty is "not a conviction and may not be considered a conviction for any purpose." *Id.* § 707.018. The imposition of a civil penalty may not be recorded on the owner's driving record, and the owner may not be arrested for failing to timely pay the civil penalty. *Id.* § 707.019. Thus, we conclude the Legislature intended that proceedings under ordinances adopted pursuant to Chapter 707 are civil, not criminal. *See Fisher*, 164 S.W.3d at 646–47; *Ex parte Drake*, 212 S.W.3d at 826 (concluding surcharges imposed under driver responsibility program were civil not criminal).

We also conclude Bowman has not provided the "clearest proof" that the Camera Laws are so punitive as to negate the Legislature's clear intent that the law is civil. The civil penalty imposes no physical restraint on the person and, while a penalty has some punitive effect, it does not constitute the same type of affirmative disability or restraint as a criminal conviction. *See Fisher*, 164 S.W.3d at 648; *Drake*, 212 S.W.3d at 827. Monetary penalties have not historically been viewed as punishment. *Drake*, 212 S.W.3d at 827 (citing *Hudson v. United States*, 522 U.S. 93, 104 (1997)). Additionally, the Camera Laws "lack the scienter requirement typically found in criminal statutes." *Fisher*, 164 S.W.3d at 649. Although the possibility of a civil penalty may have a deterrent effect, "the mere presence of this [deterrent] purpose is insufficient to render the sanction criminal because such deterrence serves civil as well as criminal goals." *Drake*, 212 S.W.3d at 827; *see also Fisher*, 164 S.W.3d at 650 ("an incidental deterrent effect will not make the statute punitive").

Finally, the Camera Laws are rationally related to alternative purposes. *See Fisher*, 164 S.W.3d at 651 (noting that rational connection to nonpunitive purpose is "most significant" factor in determining whether statute's effects are punitive or civil). Half of the revenue generated by the Camera Laws goes to the state to fund regional trauma centers and emergency medical services, while the other half may be used by the City "only to fund traffic safety programs, including pedestrian safety programs, public safety programs, intersection improvements, and traffic enforcement." TEX. TRANSP. CODE ANN. § 707.008(a). Also, the civil penalty under the Camera Laws is not excessive in relation to its purpose. *See id.* The $75 civil penalty is relatively small compared to the maximum fine of $200 for a misdemeanor violation of the Rules of the Road. *See* TEX. TRANSP. CODE ANN. § 542.401 (person convicted of misdemeanor traffic offense punished by fine of not less than $1 or more than $200). Further, operation of a motor vehicle is a privilege, not a right, and is subject to regulation. *Tex. Dep't of Pub. Safety v. Richardson*, 384 S.W.2d 128,

–23–

132 (Tex. 1964) ("one making use of the highways of the state is exercising a privilege which is subject to regulation"); *Poplin*, 933 S.W.2d at 243. The civil penalty at issue here is less drastic than revocation of a driver's license. Yet, revocation of a privilege is not considered punitive. *See Hudson*, 522 U.S. at 104; *Poplin*, 933 S.W.2d at 244 (driver's license revocations have traditionally not been found to be punitive in nature). Based on the record in this case, "we find there is little evidence, much less the clearest proof" that the civil penalty authorized by Chapter 707 is so punitive in form and effect as to render the proceedings to impose it criminal rather than civil. *See Fisher*, 164 S.W.3d at 653; *Drake*, 212 S.W.3d at 827.

We now apply our conclusion that the Camera Laws are civil to the first three of Bowman's constitutional challenges.

### a. Article I, Section 10

By its terms, article I, section 10 of the bill of rights applies only in "criminal prosecutions." TEX. CONST. art. I, § 10.[9] The supreme court has recognized that article I, section 10 "clearly refers only [to] criminal prosecutions in the ordinary sense." *Ex parte Winfree*, 263 S.W.2d 154, 156 (Tex. 1953) (concluding contempt proceedings in divorce case were not criminal prosecutions); *see also Risker v. Comm'n for Lawyer Discipline*, 94 S.W.3d 625, 630 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding attorney disciplinary proceeding was civil and not a criminal

---

[9] In *all criminal prosecutions* the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

TEX. CONST. art. I, § 10 (emphasis added).

prosecution in the ordinary sense; therefore, speedy trial requirement of art. I, § 10 did not apply). Having concluded that proceedings under the Camera Laws are civil proceedings, we further conclude the procedural rights in article I, section 10 do not apply. *See Winfree*, 263 S.W.2d at 156. We reject Bowman's challenge to the Camera Laws under article I, section 10.

### b. Article XI, Section 5

Bowman argues the Ordinance is in conflict with transportation code section 542.302 because it imposes liability on the owner of a vehicle without the proof required for a criminal prosecution of an owner for a traffic violation under that section. He asserts this conflict renders the Ordinance unconstitutional under article XI, section 5.[10]

Transportation code section 542.302 defines a criminal offense by a vehicle owner for a traffic violation. It provides, "A person who owns a vehicle or employs or otherwise directs the operator of a vehicle commits an offense if the person requires or knowingly permits the operator of the vehicle to operate the vehicle in a manner that violates law." TEX. TRANSP. CODE ANN. § 542.302 (West 2011). Chapter 707 and the Ordinance, on the other hand, define a civil penalty imposed on the owner of a vehicle under similar circumstances. As we have recognized, the Legislature may impose a civil and a criminal penalty for the same act or omission. *See Poplin*, 933 S.W.2d at 243. Because the Ordinance, as authorized by Chapter 707, establishes only a civil penalty and is not a criminal prosecution, it is not in conflict with section 542.302. We reject Bowman's challenge under article XI, section 5.

---

[10] In pertinent part, article XI, section 5 provides:

> The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

TEX. CONST. art. XI, § 5.

*c.* **Article I, Section 29**

Next, Bowman contends the Camera Laws violate article I, section 29 of the constitution.[11] The substance of Bowman's argument is that, by enacting the Camera Laws, the Legislature and the City "took conduct that is a crime and still is a crime (running a red light, a traffic offense which is a misdemeanor), and made a civil penalty for such, so as to deprive the registered owner of a vehicle like Bowman of the rights guaranteed him by the Texas Bill of Rights." He contends that the Camera Laws fail to provide the rights enumerated in article I, section 10 for criminal prosecutions and therefore violate article I, section 29.

As discussed above, proceedings under the Camera Laws are not criminal prosecutions and do not violate article I, section 10. Therefore, the Camera Laws do not violate article I, section 29 as argued by Bowman. *See Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 147 (Tex. 2010) (stating bill of rights provisions are absolute *when they apply*, but "section 29 does not determine whether and how the Bill of Rights' provisions apply"). We further conclude Bowman has failed to show the Camera Laws violate any other applicable provision of the bill of rights. We reject Bowman's challenge based on article I, section 29.

**5.    Substantive Due Course of Law**

Bowman asserts the Camera Laws violate his right to substantive due course of law under article I, section 19 of the constitution. The due course of law section provides in relevant part that no citizen shall be deprived of property except by the "due course of the law of the land." TEX. CONST. art. I, § 19. Although textually different, Texas courts generally construe the due course of law provision in the same manner as the Due Process Clause of the Fourteenth

---

[11] Article I, section 29 provides:

> To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

TEX. CONST. art. I, § 29.

Amendment.  *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004); *Garcia*, 893 S.W.2d at 525.  When neither a suspect classification nor a fundamental right is involved, we review the government's actions under the deferential "rational basis" test to determine if the actions were arbitrary and unreasonable and thus violate the substantive due course of law provision.  *See City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007) (per curiam); *Garcia*, 893 S.W.2d at 525.  Under this test, a law is valid if it bears a rational relationship to a legitimate state interest.  *TPLP Office Park*, 218 S.W.3d at 65–66; *Garcia*, 893 S.W.2d at 525.  The claimant must prove that it is not at least "fairly debatable" that the statute or conduct rationally relates to a legitimate governmental interest.  *TPLP Office Park*, 218 S.W.3d at 65–66; *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Recently, the Texas Supreme Court stated that the protections of the due course of law provision, "for the most part, align with the protections found in the Fourteenth Amendment." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 86 (Tex. 2015).  However, given the legal context in which the clause was adopted, the supreme court concluded the due course of law provision bears "at least some burden for protecting individual rights that the United States Supreme Court determined were not protected by the federal Constitution." *Id.* at 87.  Therefore, "the standard of review for as-applied substantive due course challenges to economic regulation statutes includes an accompanying consideration . . . :  whether the statute's effect as a whole is so unreasonably burdensome that it becomes oppressive in relation to the underlying governmental interest." *Id*.  In sum, to overcome the presumption that statutes are constitutional,

> the proponent of an as-applied challenge to an economic regulation statute under Section 19's substantive due course of law requirement must demonstrate that either (1) the statute's purpose could not arguably be rationally related to a legitimate governmental interest; or (2) when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the

–27–

governmental interest.

*Id*.

Bowman complains in his facial challenge that the Camera Laws deprive a motor vehicle owner of property, the $75 penalty, $25 late fee, and use of the vehicle due to the registration hold, without due course of law by creating an "irrebuttable" presumption that the owner was the operator at the time the vehicle was photographed running a red light. This argument is based on the text of section 707.013, which provides:

(a) It is presumed that the *owner* of the motor vehicle *committed the violation* alleged in the notice of violation mailed to the person *if* the motor vehicle depicted in a photograph or digital image taken by a photographic traffic signal enforcement system belongs to the owner of the motor vehicle.

(b) If, at the time of the violation alleged in the notice of violation, the motor vehicle depicted in a photograph or digital image taken by a photographic traffic signal enforcement system *was owned* by a person in the business of selling, renting, or leasing motor vehicles or by a person who was not the person named in the notice of violation, the presumption under Subsection (a) is rebutted on the presentation of evidence establishing that the vehicle was at that time:

  (1) being test driven by another person;

  (2) being rented or leased by the vehicle's owner to another person; or

  (3) owned by a person who was not the person named in the notice of violation.

(c) Notwithstanding Section 707.014, the presentation of evidence under Subsection (b) by a person who is in the business of selling, renting, or leasing motor vehicles or did not own the vehicle at the time of the violation must be made by affidavit, through testimony at the administrative adjudication hearing under Section 707.014, or by a written declaration under penalty of perjury. The affidavit or written declaration may be submitted by mail to the local authority or the entity with which the local authority contracts under Section 707.003(a)(1).

(d) If the presumption established by Subsection (a) is rebutted under Subsection (b), a civil penalty may not be imposed on the owner of the vehicle or the person named in the notice of violation, as applicable.

(e) If, at the time of the violation alleged in the notice of violation, the motor vehicle depicted in the photograph or digital image taken by the photographic traffic signal enforcement system was owned by a person in the business of renting or leasing motor vehicles and the vehicle was being rented or leased to an individual, the owner of the motor vehicle shall provide to the local authority or the entity with

which the local authority contracts under Section 707.003(a)(1) the name and address of the individual who was renting or leasing the motor vehicle depicted in the photograph or digital image and a statement of the period during which that individual was renting or leasing the vehicle. The owner shall provide the information required by this subsection not later than the 30th day after the date the notice of violation is received. If the owner provides the required information, it is presumed that the individual renting or leasing the motor vehicle committed the violation alleged in the notice of violation and the local authority or contractor may send a notice of violation to that individual at the address provided by the owner of the motor vehicle.

TEX. TRANSP. CODE ANN. § 707.013 (emphasis added). The Ordinance contains the same language regarding the presumption. It also provides several affirmative defenses to the imposition of the civil penalty that may be proven by a preponderance of the evidence, including that the vehicle was stolen and operated by another without effective consent of the owner, the license plate was stolen and placed on a different vehicle, and the person receiving the notice of violation was not the owner at the time of the violation. *See* Ordinance § 22-189(f).

Bowman contends the presumption in subsection 707.103(a) is rebuttable only by persons in the business of selling, renting, or leasing motor vehicles or by persons who did not own the vehicle at the time of the violation. We do not agree that section 707.013 is so limited.

Section 707.013(a) provides for a presumption that the owner of the motor vehicle committed the violation if he owned the vehicle shown in the notice. The language does not indicate the presumption is conclusive or "irrebuttable." Indeed, the following subsections identify certain means for rebutting the presumption but do not purport to be an exclusive list for doing so. Subsection (b) provides that if, at the time of the violation, the vehicle was being driven by another person who was test driving, renting, or leasing the vehicle and the owner was in the business of selling, renting, or leasing vehicles, the presumption is rebutted. *Id*. § 707.013(b). Similarly, if, at the time of the violation, the vehicle was owned by a person other than the person named in the

–29–

notice of violation, the presumption is rebutted on presentation of evidence of that fact.[12] *Id*. § 707.013(b)(3).

Additionally, the Camera Laws show that the administrative hearing officer's decision must be based on evidence. The hearing officer must have the power to compel the attendance of witnesses and production of documents and the authority to administer oaths. *Id*. § 707.009(2). Section 707.014(d) requires that the issues be proven by a preponderance of the evidence at the administrative hearing. *Id*. § 707.014(d). These procedures would be unnecessary if the presumption were irrebuttable. There is no language in the statute prohibiting an owner from presenting evidence at the administrative hearing to rebut the presumption.

Bowman responds, however, that allowing an owner to rebut the presumption with contrary evidence renders subsection 707.013(b) meaningless. We disagree. Subsection (c) allows the presentation of evidence under subsection (b) to be made by affidavit, testimony at the administrative hearing, or by a written declaration under penalty of perjury. *Id*. § 707.013(c). The affidavit or declaration may be submitted by mail. *Id*. Thus, subsections (b) and (c) allow the persons described in subsection (b) an additional means of rebutting the presumption by filing an affidavit or declaration by mail. Permitting other owners to present evidence at the administrative hearing to rebut the presumption does not render subsection (b) meaningless.

Considering the Camera Laws as a whole, we conclude the Legislature used the term "presumption" according to its ordinary meaning: "A presumption is simply a rule of law requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary." *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). The presumption disappears when evidence to the contrary is introduced. *Id*. "The Constitution does not prohibit statutes from

---

[12] This situation might arise when the violation occurs shortly after a private sale of the vehicle but before the registration is updated to reflect the new ownership.

creating rebuttable presumptions such as this one, even if they favor a state agency." *Pierce v. Tex. Racing Comm'n*, 212 S.W.3d 745, 762 (Tex. App.—Austin 2006, pet. denied) (presumption of violation of rule prohibiting use of illegal drugs in horse racing arising from positive drug test was rebuttable); *see also Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 932–33 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (statutory presumption that home owners' association reasonably exercises its discretionary authority concerning restrictive covenants was permissive and rebuttable).

Bowman argues on appeal that he also raised an as-applied challenge to the Camera Laws. He contends he cannot rebut the presumption because, based on the summary judgment evidence, he is not in the business of selling, renting, or leasing vehicles; he owned the vehicle at the time of the violation; and neither the vehicle nor its license plates had been stolen at the time. But, as we have seen, the statute does not preclude someone in Bowman's position from rebutting the presumption.

Bowman presented no evidence that the Camera Laws are unconstitutional as applied to him. He offered no evidence that he was not driving the vehicle at the time of the violation. Thus, he did not establish he was able to rebut the presumption with such evidence but was prevented from presenting that evidence because of the statute.

The state and the City have legitimate interests in deterring red light violations and in funding emergency medical services and traffic safety programs. The civil penalty provided by the Camera Laws is rationally related to those interests. Bowman failed to present any summary judgment evidence showing that the statute's purpose was not rationally related to a legitimate governmental interest or that the effect of the statute as applied to him was not rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest. *See Patel*, 469 S.W.3d at 87. As such, Bowman has not carried his burden to show the statute as applied to him

violates his right to substantive due course of law.

On this record, we cannot say that Bowman met his burden to show the Camera Laws violate the right to substantive due course of law either on their face or as applied to him. We reject Bowman's substantive due course of law challenge.

**6.      Right to Jury Trial**

Bowman's next constitutional challenge is that the Camera Laws violate the right to a jury trial provided by article I, section 15 of the constitution. That section provides in part:

> The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.

TEX. CONST. art. I, § 15. This provision preserves the right to trial by jury for those actions, or analogous actions, tried by jury when the constitution was adopted in 1876. *Garcia*, 893 S.W.2d at 526; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 450 (Tex. 1993); *Roper v. Jolliffe*, 493 S.W.3d 624, 631 (Tex. App.—Dallas 2015, pet. denied). Access to a jury trial need not be provided at the initial adjudication, so long as a right to a jury trial on appeal is secured. *Garcia*, 893 S.W.2d at 526. "A jury trial is not mandated by this provision for any other judicial proceeding." *Tex. Ass'n of Bus.*, 852 S.W.2d at 450.

Bowman relies on *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288 (Tex. 1975), in which the supreme court concluded the defendant was entitled to a jury in a suit to impose statutory penalties for violation of an agreed injunction issued by the trial court under the deceptive trade practices act. *Id*. at 289–90, 293. The court observed, however, that in certain types of adversary proceedings, the constitutional right to a jury trial does not attach. *Id*. at 293; *see Tex. Ass'n of Bus.*, 852 S.W.2d at 450. Among those proceedings are appeals from administrative decisions. *Tex. Ass'n of Bus.*, 852 S.W.2d at 450. The supreme court in *Texas Association of Business* concluded that assessments of civil penalties by agencies for violations of their regulations "are

not actions, or analogous actions, to those tried to a jury at the time the constitution of 1876 was adopted." *Id.* at 451.

Proceedings under the Camera Laws are administrative and serve to regulate the operation of motor vehicles on public roads. *See Richardson*, 384 S.W.2d at 132 (operation of motor vehicle is privilege which is subject to regulation). We conclude that administrative proceedings to enforce automated traffic signals are not actions or analogous to actions tried to a jury in 1876. Accordingly, we reject Bowman's challenge based on the right to a jury trial in article I, section 15.

### 7. Open Courts

Article I, section 13 provides in part, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. Bowman argues that the requirement of filing a sworn statement of personal financial obligation in order to appeal a liability finding to the municipal court violates the second of the three open courts guaranties provided in the constitution. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 448. The second guarantee is that "citizens must have access to those courts unimpeded by unreasonable financial barriers." *Id.*

Section 707.016 permits an appeal by trial de novo from a finding of liability by a hearing officer. TEX. TRANSP. CODE ANN. § 707.016. The owner may appeal by filing a petition with the municipal court within thirty days of the hearing officer's finding of liability and paying the costs required by law for the court. *Id.* The statute also provides: "An appeal stays enforcement and collection of the civil penalty imposed against the owner of the motor vehicle. The owner shall file a notarized statement of personal financial obligation to perfect the owner's appeal." *Id.* § 707.016(d).

Bowman argues section 707.106(d) requires the posting of a supersedeas bond in order to

appeal and violates the open courts provision. We disagree. Section 707.016(d) requires only the filing of a "notarized statement of personal financial obligation." Chapter 707 does not define the phrase "notarized statement of personal financial obligation"; therefore, we give the words their common meaning. We conclude the words mean exactly what they say: an owner seeking to perfect an appeal must file a "notarized statement of personal financial obligation." In other words, he must file a notarized document stating his personal financial obligation for the civil penalty in the event the appeal is unsuccessful. Nothing in the statute requires the deposit of money. Rather, the language of the statute requires a statement of personal financial obligation. The filing of a statement of personal financial obligation is unlike the prepayments the supreme court has found to violate the open courts provision. *See Cent. Appraisal Dist. of Rockwall Cty. v. Lall*, 924 S.W.2d 686, 689–91 (Tex. 1996) (requiring taxpayers to pay previous year's assessment, which may include some or all of disputed amount, as condition for judicial review violated open courts provision); *R Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314, 315 (Tex. 1994) (requiring payment of disputed sales taxes as precondition for judicial review violated open courts guaranty); *State v. Flag–Redfern Oil Co.*, 852 S.W.2d 480, 485 (Tex. 1993) (requiring mineral lessees to remit disputed royalty payments prior to seeking judicial review of state's royalty audit violated open courts provision); *Tex. Ass'n of Bus.*, 352 S.W.2d at 450 (conditioning judicial review on prepayment of challenged administrative penalties violated open courts guarantee).

"[O]nly when the payment of the administrative penalty is a prerequisite to judicial review does the payment run afoul of the constitution." *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). The Camera Laws do not make payment of the civil penalty a prerequisite to judicial review. We reject Bowman's open courts challenge.

### 8. Exclusive Appellate Jurisdiction

Lastly, Bowman argues government code section 29.003(g) is unconstitutional because it

provides that the municipal court has "exclusive appellate jurisdiction" over appeals from the administrative hearing officer. *See* TEX. GOV'T CODE ANN. § 29.003(g) ("A municipal court, including a municipal court of record, shall have exclusive appellate jurisdiction within the municipality's territorial limits in a case arising under Chapter 707, Transportation Code."). He contends this provision violates the grant of appellate jurisdiction to the courts of appeals and the Texas Supreme Court in article V, sections 3 and 6. *See* TEX. CONST. art. V, §§ 3, 6.

We disagree. The jurisdiction of the courts of appeals extends to "all cases of which the District Courts or County Courts have original or appellate jurisdiction, *under such restrictions and regulations as may be prescribed by law*." *Id*. art. V, § 6 (emphasis added). The supreme court's jurisdiction extends to "all cases except in criminal law matters and *as otherwise provided in this Constitution or by law*." *Id*. art. V, § 3 (emphasis added). The supreme court has long recognized that "the principle is fixed that the Legislature has the power to limit the right of appeal." *Sultan v. Mathew*, 178 S.W.3d 747, 752 (Tex. 2005) (quoting *Seale v. McCallum*, 287 S.W. 45, 47 (Tex. 1926) (orig. proceeding)). In *Sultan*, the court concluded the Legislature had the power under the constitution to make the decision of a county court or county court at law final following a de novo appeal from small claims court. *Id*. Therefore, the Legislature did not violate the constitution by precluding an appeal to the court of appeals from cases originating in small claims court. *See id*.

By providing that municipal courts have exclusive appellate jurisdiction in cases arising under Chapter 707, "the Legislature exercised its constitutional power to restrict the jurisdiction of the courts of appeals." *Sultan*, 178 S.W.3d at 752. The Legislature has also exercised its constitutional authority under article V, section 3 by providing that "an appeal may be taken to the supreme court only if the appeal was first brought to the court of appeals." TEX. GOV'T CODE ANN. § 22.001(c) (West Supp. 2017). Bowman has not shown that the grant of exclusive appellate

jurisdiction to the municipal court in cases arising under Chapter 707 within a city violates article V, section 3 or section 6. We reject Bowman's constitutional challenges under article V, sections 3 and 6.

**9.      Summary**

After considering the constitutional challenges raised by Bowman in his motion for summary judgment, we conclude Bowman failed to rebut the strong presumption that Chapter 707 and the Ordinance are constitutional. We sustain the City's third issue.

CONCLUSION

The trial court erred by denying the City's partial plea to the jurisdiction, granting Bowman's motions for summary judgment, and denying the City's motion for summary judgment. We vacate the portion of the trial court's final judgment denying the City's partial plea to the jurisdiction and dismiss Bowman's non-constitutional claims for want of subject matter jurisdiction. We reverse the remainder of the trial court's final judgment and render judgment that Bowman take nothing on his remaining claims.


/Craig Stoddart/
CRAIG STODDART
JUSTICE

161126F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CITY OF RICHARDSON, Appellant

No. 05-16-01126-CV     V.

RUSSELL J. BOWMAN, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-15-00289.
Opinion delivered by Justice Stoddart.
Justices Lang-Miers and Fillmore participating.

In accordance with this Court's opinion of this date, we **VACATE** the trial court's denial of the City of Richardson's partial plea to the jurisdiction, **REVERSE** the trial court's amended final judgment, and **RENDER** judgment as follows:

1. The City of Richardson's Partial Plea to the Jurisdiction is **GRANTED**;

2. Bowman's claim for a declaration that the City failed to comply with section 707.003(c) and (e) of the transportation code is **DISMISSED** for want of jurisdiction;

3. Bowman's Amended Motion for Summary Judgment is **DENIED**;

4. The City of Richardson's Omnibus Motion for Summary Judgment is **GRANTED**;

5. Bowman's claim for a declaration that the Red Light Camera Ordinance and chapter 707 of the transportation code are unconstitutional is **DENIED**;

6. All relief requested and not awarded in this judgment is **DENIED**. This is a final judgment disposing of all parties and all issues in this case.

It is **ORDERED** that appellant City of Richardson recover its costs of this appeal from appellee Russell J. Bowman.

Judgment entered this 27th day of June, 2018.